CHARLES J. McCOY v. NORTHERN HEATING & ELECTRIC COMPANY.[1]

May 15, 1908.

Nos. 15,529—(39).

**Negligence of Vice Principal.**

Rule in Carlson v. Northwestern Tel. Exch. Co., 63 Minn. 428, applied, and *held:*

The evidence was sufficient to establish the following facts: That a trench which had been dug to the depth of seven feet and braced with a single plank held in place on each side of the trench by crosspieces was dangerous and liable to cave in; that such condition could have been discovered by the master in the exercise of ordinary care; that in directing a workman to enter the trench while in such condition the foreman was acting as vice principal, and that the master was guilty of negligence in ordering a workman into the trench without giving him due warning of the dangers and risks. It does not conclusively appear from the evidence that the workman was familiar with the nature of the soil and the security of the concrete, or that from his experience, he was able to judge of the conditions and assumed the risks of entering the trench pursuant to the master's direction.

[1] Reported in 116 N. W. 488.

Action in the district court for Ramsey county to recover $15,000 for personal injuries. The case was tried before Orr, J., and a jury which rendered a verdict for $7,000 in favor of plaintiff. Defendant's request to charge referred to in the opinion was as follows: "That the proximate cause of the cave-in was the conduct of Siedquist in removing the cross-brace and in pounding at it and thereby causing the cave-in." From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

D. W. Lawler and D. F. Lyons, for appellant.

J. R. Donohue and P. J. McLaughlin, for respondent.

LEWIS, J.

During the summers of 1905 and 1906 appellant was engaged in the work of laying pipes through certain streets for the purpose of furnishing heat and light in the city of St. Paul. In the prosecution of the work in August, 1906, appellant excavated a trench on the northerly side of Seventh street, running westerly from Sibley street two hundred or three hundred feet. The street was paved with concrete and asphalt, and it was necessary to cut through the same in making the trench, which was from two to three feet wide and from five to seven feet deep. Appellant employed two crews, one to do the digging and put in the bracing, and the other to lay the pipe. Respondent had been in the employ of appellant during 1905 in another part of the city as a member of the digging crew for about six weeks, but his work had been principally sawing and preparing the bracing timber and handing it to the men in the trench. Respondent did not again work for appellant until the morning of August 13, 1906, the day before the accident, and on that day he worked most of the time in removing from the street and street car tracks the dirt thrown up from the trench, though at times he helped at shoveling in the bottom of the trench, and, according to the foreman's testimony, assisted in the work of erecting the bracing, but farther west than where the cave-in occurred. The method of bracing employed by appellant consisted of placing a $2 \times 8$ plank on each side of the trench, about midway between top and bottom, and bracing the same by $4 \times 4$ crosspieces. It was assumed that this bracing was sufficient to prevent the trench

from caving in. On the morning of the fourteenth respondent and several other men were directed to level off the bottom of the trench preparatory to laying the pipe, and at about 8:30, while so at work, the northerly bank of the trench for a distance of about fifty feet gave way, precipitating a strip of concrete and asphalt two feet wide and several feet long into the ditch and against respondent, causing the injuries which form the basis of this action.

The negligence charged was that appellant had not employed a reasonably safe method of bracing the sides of the trench, and that appellant negligently directed respondent to go into the trench while it was in an unsafe condition, without warning him of the dangers connected therewith; and the cause was submitted to the jury on that theory. Appellant submits for consideration upon this appeal that the trial court erred in stating to the jury that the foreman, James Ryan, was a vice principal. Appellant also insists that it conclusively appeared from the evidence that the ordinary method of bracing the sides of the trench was followed, and that it was not negligent in that respect; also that it conclusively appeared from the evidence that respondent was an experienced workman, that he and the foreman were fellow servants, that respondent assumed the risks of going into the trench, and that there was no evidence to justify the jury in finding that the foreman knew the condition of the trench was dangerous, even if such condition existed.

The trial court, it is true, did state to the jury that the foreman occupied the position of vice principal and represented the master, but that statement did not necessarily constitute a fatal error. Standing alone, it would certainly be misleading and erroneous, but when considered with the other specific instructions, we are of opinion that the jury were not misled thereby. The jury were specifically charged that, if respondent was directed to go into an unusual and hazardous place, appellant would be liable; that they were to determine by a fair preponderance of the evidence whether under all the circumstances the foreman was advised of a condition which existed there that was dangerous or unusual, and, if the foreman ordered respondent to go into a hazardous and dangerous place without warning, then appellant was liable. Again, in answer to a question by one of the jurors, the court said: "While the employee assumes for himself the ordinary and

obvious dangers of the work or business in which he engages, the master is bound to use ordinary care to warn and protect him from unusual and unnecessary dangers and risks. If the nature and magnitude of the work [and] the number of men engaged are such that the exercise of ordinary care for the safety and protection of the workmen from unusual and unnecessary danger requires that they be given reasonable orders, and that they be not ordered from one part of the work to another without warning into places of unusual danger and risk which are not obvious and open to the senses and known to them, but which might be ascertained by the master by a proper inspection, then the absolute duty rests upon the master to give such reasonable order." And again: "If he was directed to go into an unreasonable and unusual or hazardous place, or if you are satisfied by a fair preponderance of the evidence that the defendant did not install a reasonably safe method or kind of bracing, or that the defendant failed to exercise reasonable care under all of the circumstances, then your verdict would be for the plaintiff."

As we understand the record, the case was commenced, tried, and submitted to the jury upon the theory that appellant, having knowledge of the true condition of the trench, was negligent in directing respondent to go into it without taking reasonable precautions to make it safe, and without warning him. For all general purposes, under the doctrine of Lindvall v. Woods, 41 Minn. 212, 42 N. W. 1020, 4 L. R. A. 793, the foreman and respondent were fellow servants, engaged in the same general work. But if in the conduct of that work it became necessary to dig a trench seven feet deep in a soil of unstable and treacherous character, leaving a strip of insecure concrete and asphalt two feet wide on one side, then it became necessary for the master to adopt some different and safer method than one which might be sufficient under different circumstances with different soil. If the soil under the concrete was of a sandy and gravelly character, and a long and heavy strip of concrete and asphalt ten or twelve inches thick was not braced and was left unsupported, there should be no hesitancy in arriving at the conclusion that the trench was dangerous, and that a workman should not be directed to go into it unless specifically informed of its condition and the risk incurred.

We consider the evidence sufficient to go to the jury upon the ques-

tion, the knowledge of the foreman, the sufficiency of the bracing, and the condition of the asphalt. One witness of experience in such matters testified that he called the attention of the foreman to the fact that the trench looked dangerous, and that the asphalt was cracked on top, and that the foreman replied he would try and fix it but had not sufficient material. If the facts were as above stated, then the master was required to act with regard to those conditions, if within his knowledge, or if the facts were ascertainable by him in the exercise of ordinary care. On this occasion appellant's representative was James Ryan, the foreman. He was directing operations, and if he knew or had reason for knowing the hazardous condition of the trench, and directed respondent to go into it, then he was acting as vice principal. The master is charged with the duty of knowing what emergencies arise in the conduct of a business where men are subject to the orders of a foreman. It is entirely reasonable that a master, who, by virtue of his contractual relation to his employees, has authority over them, must exercise reasonable supervision over the work as it progresses, in order that his authority shall not be used to the detriment of those expected to obey his orders. Although the charge of the trial court is somewhat prolix, and the principles of law governing the question were not set forth with conciseness and certainty, yet, when the entire charge is read, we think the correct theory of the case was fairly presented to the jury.

It does not follow that because respondent worked for appellant in the construction of a similar trench on another occasion at another place during the previous year that he was familiar with the nature of the soil, the liability of the breaking away of the asphalt, and the insufficiency of the bracing on this occasion. Nor does it follow that because on the day before the accident he was engaged in working in and around portions of the trench that he was in position to become familiar with the character of the soil and the sufficiency of the bracing at the point at which the accident occurred. When respondent went to work on the morning of the thirteenth, that portion of the trench where the accident happened had practically been completed and the bracing put in. Under all the circumstances, it was a question of fact for the jury to decide whether or not respondent was so familiar with the situation that he could determine what the risks were and conse-

quently assumed the same. The case is governed by the rule announced in Carlson v. Northwestern Tel. Exch. Co., 63 Minn. 428, 65 N. W. 914.

The court submitted to the jury the question of the negligence of the coemployee Siedquist, who it was claimed by appellant was guilty of negligence in removing one of the braces. Conceding that this issue was tried and submitted to the jury with the consent of respondent, although not pleaded, we find no error in the charge of which appellant could complain. The evidence was not conclusive that the accident was caused by the act of Siedquist in removing one of the braces, and hence the fifth subdivision of appellant's third request was properly refused.

The several requests referred to in the assignments of error were covered by the general charge, or were too incomplete to require submission. We find no errors.

Affirmed.