RANKIN v. INDUSTRIAL CONTRACTORS, INC.

[No. 868A137. Filed April 17, 1969. Rehearing denied June 18, 1969. Transfer denied October 24, 1969.]

*Sidney L. Berger, John C. Cox,* of Evansville, for appellant.

*Robert H. Hahn,* of Evansville, and *Bamberger, Foreman, Oswald and Hahn,* of counsel, of Evansville, for appellee.

SHARP, J.—This is an appeal from an award of the Full Industrial Board of Indiana denying compensation to Appellant, Timothy Rankin.

Appellant filed his claim for benefits under the Indiana Workmen's Compensation Act on Form No. 9, wherein he stated that on March 8, 1966, he was rendered permanently and totally disabled as a result of an accident which allegedly arose out of and in the course of his employment with Appellee. Hearing was had before a single member of the Industrial Board, who found for the Appellant and against the Appellee on his claim. Appellee appealed the award of the single member to the Full Industrial Board, and the Full Board reversed the award of the single member. It is from the award of the Full Board that this appeal is taken, Appellant assigning as error that the award of the Full Board is contrary to law.

The sole issue for determination by this court is whether there is such a showing that the award is not supported by

■ evidence of probative value as will compel us to hold as a matter of law that the finding of the Full Board does not rest upon a foundation of fact.

The evidence discloses that Appellant was employed by Appellee as an operating engineer and as of the date in question had been operating a fork lift truck for two or three days at a specific job site. Appellant testified that the job required that he drive the truck over ruts left by delivery trucks and as a result of the occurring jolts he developed a pain in his back and left leg.

Defendant's (Appellee's) Exhibit A, which is a letter written by one Dr. James C. Ploch, a chiropractor, to The Aetna Casualty and Surety Company, discloses that on March 10, 1966, Appellant went to the said Dr. Ploch for treatment, complaining that his lower back was bothering him. After failing to respond to treatment, Dr. Ploch suggested hospitalization. Said exhibit also discloses that Appellant had previously, on November 13, 1964, gone to Dr. Ploch for professional services for a backache, and after ten treatments was released on February 27, 1965.

Dr. William C. Fisher examined the Appellant and the essential part of his report dated May 31, 1966, is as follows:

"With respect to the question as to whether or not repeated vibrations or jolting by reason of riding a fork lift truck could cause the problem, it can only be stated that since everyday use of the spiral joints results in similar vibrations and jolting and since they can in due course result in subsequent collapse of the discs, it would not seem unreasonable that prolonged riding in said truck could result in said condition."

Dr. William C. Fisher testified on direct examination that Appellant was referred to him for treatment in March, 1966, by Dr. Henry Leibundguth and that an operation was performed on Appellant March 30, 1966, to remedy a herniated vertebral disc between the fourth and fifth lumbar vertebrae

on the left side. On cross-examination Dr. Fisher testified as follows:

"Q. Doctor, the last question just asked you, as to whether or not the riding of the tractor and jolting could have caused his condition, and I believe you said that it could have in your opinion: That is based on the history you have here with respect to what he told you at that time. Is that right?

"A. Yes.

"Q. Now, how long a period of riding on this tractor, in your opinion, would it take in order to have been given this man's history, to cause this particular injury? Would it have to be a sustained period of time?

"A. No, I don't believe so. It could, I think, happen during a very brief period of time. I think this should be so clarified as to any opinion about this.

"Q. Is your opinion, in part, based on the fact that he had prior history of a back condition?

"A. Yes, that this was probably an aggravation type of difficulty. We see people who are bending over brushing their teeth and all of a sudden they will develop pain in the back and leg; we see people walking along the street and step down off the curb and all of a sudden have pain develop in the leg; so that any of these things—which are two or three little, minor incidents—precipitate the problem, and in most of them we obtain a history of having previous backache. So, I think, to be clear in the matter, as far as what I believe, I would say this would be an aggravation.

"Q. Doctor, in your prior history that was taken from the patient, that you have, was the specific area of this prior difficulty mentioned? Can you tell me what that was, the location in his back?

"A. It was the lumbar level of his spine, as I understood it, the same area of the spine; but it is my understanding that he had not had any previous leg trouble, pain.

"Q. Now, if he had not had any previous leg trouble at all on either side, he had difficulty with his back; would your opinion still be that this riding on this tractor caused the onset of his condition, as you found him when you operated? The riding of the tractor a short period of time could cause it?

"A. My conception on this problem: when he was having back trouble previously, he was having progressive degenerative changes in the joint. This was going on and this was what he was treated for by Dr. Ploch. Then, when he developed pain in his leg—from whatever cause: riding on a mower or lift, whatever it was—this was the time that the disc collapsed and slipped out at the side and, when it slipped out the side, it hit the nerve and he had pain in his leg. So this is a new part of the same condition."

In an earlier case our court in *Standard Cabinet Co. v. Landgrave,* 76 Ind. App. 593, 596, 132 N. E. 661 (1921), stated:

"It has been repeatedly held by this Court that the words, 'by accident arising out of and in the course of employment as used in the Workmen's Compensation Act', should be liberally construed and harmony with the humane purpose of the Act, and that the word 'accident' means an unlooked for mishap or untoward event, not expected or designed."

See also, *Marshall v. Tribune-Star Publishing Co.,* 251 Ind. 557, 243 N. E. 2d 761 (1969), for Appellate Court opinion, see 142 Ind. App. 556, 236 N. E. 2d 508 (1968).

The decision of the Hearing Member was consistent with this broad mandate. In reversing the Hearing Member and denying an award in this case the Full Industrial Board has acted contrary to the mandate of the Workmen's Compensation Act.

We conclude that the evidence in this case was not in conflict in any real sense. It appears that this evidence, together with all reasonable inferences which could be drawn thereof, supports the conclusion that the injury to the plaintiff was in the course of his employment. In reading the Appellee's brief, it appears that the Appellee would require the claimant in a workman's compensation case to negative the possibility of any other cause for claimant's disability. We do not think this is the law.

In the case of *Steele v. Anderson Co.*, 126 Ind. App. 445, 451, 133 N. E. 2d 896, 899 (1956), this court stated:

"We further recognize that where an accidental injury, arising out of and in the course of the employment aggravates, accelerates or activates a preexisting condition of or injury to an employee, the right is compensable."

Considering the testimony of Dr. Fisher, *supra,* and favorable to the Appellee, one cannot escape the conclusion that there was an aggravation directly resulting from a condition of employment. While there *could* have been other causes for the Appellant's injuries, there is absolutely no evidence of other causes in the record of this proceeding.

In *Tom Joyce 7 Up Company v. Layman,* 112 Ind. App. 369, 374, 44 N. E. 2d 998, 1000 (1942), this court stated:

"Generally an accident may be said to arise out of the employment, where there is a causal connection between it and a performance of some service of the employment. Causal relation is established when the accident arises out of a risk which a reasonably prudent person might comprehend as incidental to the employment at the time of entering into it, or when the facts show an incidental connection between the conditions under which the employee works and the injury."

To this same effect, see *Jeffries v. Pitman Moore Co.,* 83 Ind. App. 159, 147 N. E. 919 (1925).

The testimony of Dr. Fisher on cross-examination leads inescapably to the conclusion that the Appellant's back injury was causally connected with his employment. Our court has certainly rejected the concept that any external violence or wound is necessary as a causative factor. See *United States Steel Corp. v. Douglas,* 125 Ind. App. 212, 123 N. E. 2d 899 (1955).

In *Stanley v. Riggs Equipment Co., Inc.,* 133 Ind. App. 86, 92, 178 N. E. 2d 766 (1961), this court stated:

"[I]t is not sufficient to merely show the employment and an injury during the period of employment but the claimant must go further and show by evidence having probative value that the injury had its origin in a risk connected with the employment and that it flowed from the source as a rational consequence."

It is our belief that the Appellant has done precisely what this court required in *Stanley, supra.*

In *Bendix Products Div. v. Kolberg*, 133 Ind. App. 405, 408, 172 N. E. 2d 589, 591 (1961), this court stated:

"The rule is well settled in Indiana that an injury which hastens or accelerates a pre-existing disease or infirmity to the state of disablement is compensable though the employee's condition may have made him more susceptible to the injury."

See also, *Small, Workmen's Compensation Law of Indiana,* § 8.41, page 216.

The *Bendix* case, *supra,* is perfectly consistent with an earlier Indiana Supreme Court decision in *Heflin v. Red Front Cash and Carry Stores*, 225 Ind. 517, 521, 75 N. E. 2d 662, 664 (1947), where the court stated:

"Indiana long ago adopted the majority rule, that where an employee afflicted with disease received a personal injury under such circumstances that he might have obtained compensation under a Workmen's Compensation Act on account of the injury had there been no disease involved but the disease is materially aggravated or accelerated by the injury, resulting in disability or death earlier than would otherwise have occurred, and the disability or death does not result from the disease alone progressing naturally as it would have done under ordinary conditions, but the injury, aggravating and accelerating its progress, materially contributes to hasten its culmination, in disability or death, there may be an award under the Workmen's Compensation Act. Burns' Ann. St. § 40-1201 *et seq.; In re Bowers et al.*, 1917, 65 Ind. App. 128, 133, 134, 116 N. E. 842, and authorities there cited; *Indian Creek Coal and Mining Company v. Calvert*

*et al.*, 1918, 68 Ind. App. 474, 119 N. E. 519, 120 N. E. 709; *Puritan Bed Spring Company v. Wolfe*, 1918, 68 Ind. App. 330, 120 N. E. 417; *Krenz v. Ferguson Coal Company*, 1926, 85 Ind. App. 347, 154 N. E. 35; *State of Indiana et al. v. Gageby*, 1933, 95 Ind. App. 681, 184 N. E. 190; *Studebaker Corporation v. Jones*, 1937, 104 Ind. App. 270, 10 N. E. 2d 747."

See also, *Lock-Joint Tube Company v. Brown*, 135 Ind. App. 386, 191 N. E. 2d 110 (1963), and *E. I. DuPont v. Lilly*, 226 Ind. 267, 79 N. E. 2d 387 (1948).

When the undisputed facts lead to the conclusion that such injury arose out of the Appellant's employment it is the duty of this court to reverse the decision of the Industrial Board. See *Whaley v. Steuben Co. REMC*, 139 Ind. App. 520, 221 N. E. 2d 435 (1966).

The uncontradicted facts in this case are squarely within the principles announced by this court. In *American Maize Products Co. v. Nichiporchik*, 108 Ind. App. 502, 511, 29 N. E. 2d 801, 805 (1940), this court stated:

"While it is true that the Appellee can point to no particular date nor to any particular blow which produced the resulting injury, yet it is not necessary that the accident occurred at any particular or specific time. The series of blows to Appellee's hands produced the injury and loss which was an unintended and unexpected occurrence."

The decision of the Industrial Board is contrary to the statement in *Standard Cabinet Company v. Landgrave, supra.*

The Appellee relies heavily on the case of *City of Anderson v. Borton*, 132 Ind. App. 684, 178 N. E. 2d 904 (1961). The evidence in that case was that the claimant merely "reached over" and experienced a back injury. The contrast between the *City of Anderson* case and the instant one is demonstrated at page 694 of 132 Ind. App., page 909 of 178 N. E. 2d, where this court stated:

"In view of the fact that there is no conflict in the evidence concerning the performance of the act of bending

over to lift the trap door when the pain occurred, and since there was nothing unexpected nor any unusual exertion connected with this incident and with no conflict in the evidence that appellee's back had degenerated since his first injury to a point where pain and further damage might occur merely by the act of walking about as a normal person, we are of the opinion that the evidence was insufficient to prove that the injury occurred because of any increase in his work load or of any extra exertion. We are also of the opinion that there was a lack of any evidence to prove that the act of bending over to lift a trap door was anything so unusual to appellee's customary work as to cause an aggravation of a previously existing degenerated back."

In this case there was precisely the type of evidence this court found wanting in the *City of Anderson* case, *supra.*

We are not unmindful of the limited scope of review by this court of Industrial Board findings. Notwithstanding this, the Industrial Board's decision in this case is manifestly contrary to the letter and spirit of the Workmen's Compensation Act.

The decision of the Full Industrial Board is therefore reversed.

The Full Industrial Board is hereby instructed to reinstate the decision of Hearing Member G. Richard Pile as the decision of the Full Industrial Board and enter an award thereon in favor of the Appellant.

Reversed. Cost v. Appellee.

Lowdermilk, P.J., Cooper, Carson, Sullivan and White, J.J., concur.

Pfaff, C.J., dissents with opinion in which Hoffman, J., concurs.

DISSENTING OPINION

Pfaff, J.—I find that I am unable to concur in the majority opinion written by Judge Sharp. On several recent

occasions this court has had the opportunity to re-examine and re-assess the Indiana Workmen's Compensation Act and the decisions thereunder in cases questioning awards of the Industrial Board. The questions presented by these appeals have produced the divergence of opinion between the judges of this court that is both necessary and beneficial to changes in the law through increased understanding and interpretation of the Act.

The majority opinion resolves the particular problem of this case by giving liberal interpretation to the question of when an accident arises out of and in the course of employment.

The Industrial Board is, in my opinion, the body to determine and interpret a workable definition of such an accident. The majority opinion speaks of a liberal interpretation of the Act, and I am in agreement with this view, but only to the extent that it applies to the policies of the Industrial Board. Our legislature established the Workmen's Compensation Act and the procedures thereunder, and in so doing the Industrial Board was designated to be the administrative organization that performs interpretative and compensatory functions. If it was the intent of the legislature to liberally construe the Act, then the Industrial Board's actions must reflect this legislative mandate. As an appellate court having jurisdiction of appeals from awards of the Board, we are constrained to follow the case law that I believe to be determinative of the question in the instant case.

In *Steele v. Anderson Company* (1956), 126 Ind. App. 445, 451, 133 N. E. 2d 896, this court, in affirming an award denying compensation, stated:

"It must be conceded that there is ample evidence in the record to support an affirmative award based on the appellant's theory of liability had the Industrial Board seen fit so to do. We further recognize that where an accidental injury, arising out of and in the course of the employment, aggravates, accelerates or activates a pre-existing

condition of or injury to an employee, the right is compensable. *Heflin v. Red Front Cash and Carry Stores, Inc.* (1947), 225 Ind. 517, 75 N. E. 2d 662; *Earhart v. Cyclone Fence Company* (1934), 99 Ind. App. 48, 190 N. E. 558; *Brooks v. International Furniture Company* (1951), 122 Ind. App. 300, 101 N. E. 2d 197, Transfer Denied (1952).

"Such a situation, however, does not justify this court in reversing the present unfavorable award unless the controlling facts are such that reasonable men are forced to a conclusion contrary to that reached by the Industrial Board. *Warren v. Indiana Telephone Company* (1940), 217 Ind. 93, 26 N. E. 2d 399; *Wright v. Peabody Coal Company* (1948), 225 Ind. 679, 77 N. E. 2d 116; *James v. Zimmerman Coal Company* (1938), 105 Ind. App. 28, 13 N. E. 2d 315. . . .

"The award of the Board cannot be set aside in this case unless all the evidence is undisputed and not contradicted and leads inescapably to the sole conclusion that the appellant was entitled to an award under our Workmen's Compensation Act."

I find the evidence in the *Steele* case so identical to the evidence in the case at bar that the majority was in grave error in a recitation of a portion of the *Steele* opinion. The following quotation is from our opinion in *Steele,* at page 448:

"The appellant's testimony was corroborated, as to physical pain suffered by her on the day of the alleged accident, by the testimony of a fellow employee. She was also corroborated in other portions of her testimony by her husband, who was a witness in her behalf. The appellant insists that the above evidence is undisputed and entitled her to the relief sought as a matter of law. However, the record discloses that during a physical examination conducted by Dr. Richard G. Nilges, on the 24th day of July, 1954, she gave the following past history: 'That she had a similar severe attack in the right lower lumbar area with pain two years ago; that the pain started in the same way and that she had received six chiropractic treatments with relief.' The record also discloses that a witness for the appellee testified, in substance, as follows: 'She complained of a sore back a year prior to this occasion (June 11, 1954) and throughout that year prior she had complained several times of a sore back.'

"The appellant says that the only medical testimony was that of Dr. Richard G. Nilges, who testified that on the basis of appellant's history there could be a causal connection between her condition as he found it and the incident at her work; and that assuming her history was correct the accident on June 11, 1954, could have either caused or aggravated the condition which was found at surgery, namely, a ruptured intervertebral disc. Some of the questions propounded to him and his answers are as follows:

"Q. Doctor, do these ruptured intervertebral discs, such as Mrs. Steele had, ever result from accidental means?

"A. Yes, sir, they usually do.

"Q. Doctor, in your opinion, is it possible that the strain of lifting display boxes of windshield wiper blades which weighed approximately ten (10) pounds and, that is, for a woman lifting such boxes that weighed ten pounds and turning sideways and placing those boxes into a larger box at a slightly lower level from the table from which she picked them up, so that as she puts these smaller boxes into the larger boxes she twists her back and she stoops over, is it possible for such a movement to cause enough strain upon her body as to in turn cause a ruptured intervertebral disc such as you found Mrs. Steele had?

"A. Such a motion of the body could cause or aggravate a ruptured intervertebral disc such as Mrs. Steele had.

"Q. Do you have any history of a traumatic history, have you?

"A. We have a history as given by the patient of a twisting strain to her back that could cause her condition.

"Q. Now when you have one of these latent disc conditions most anything will create the true final hernia that requires surgery, won't it? By way of illustration, getting up and down on a chair, coughing, sneezing, bending over to dress or undress; any of those things would be the spark that sets off the final condition, may it not?

"A. Not in my experience; it requires some sort of twisting straining injury of greater or less severity to the back.

"Q. Doctor, assuming there was no latent disc condition and that a woman had successfully been doing a cer-

tain type of work for as long as two (2) years and on the particular date that falls in question in a judicial proceeding just doing what she had been doing day after day a hernia disc developed, what in that particular day's work is it would tie that condition in with the woman's work?

"A. It is always possible that the back can be placed in such a position or a strain to be placed on the back that at various times of the day a strain could occur at any time and apparently according to the woman's history did occur on the 11th day of June.

"Q. Well, what according to her history was unusual in the form of strain, what was it that she suffered?

"A. She states and I quote, 'she was bending over to pick up some windshield wiper frames and upon straightening up felt a catching in the right lower part of her back,' and if I may continue, I have had numerous patients of the same history, bending over and placing an object, and I have known the accident or incident to occur at any time, heavy or light.

"Q. And similarly it can occur, Doctor, from as simple a thing as bending over to lace your shoe if you have a latent condition?

"A. It could, but not usually. In my experience it usually is associated with picking up something."

In my opinion, the evidence and testimony of the *Steele* case is so identical to that set out in the majority opinion in this case that the two cannot be distinguished. In *Steele* the injury complained of was of the aggravation type, the same as in this case. However, the controlling facts of this case, viewed in light of the decision in *Steele,* lead me to the conclusion that the award should be affirmed here on appeal as it was in the *Steele* case.

In keeping with my views on this subject, I refer to *Gill v. James A. Gill & Sons* (1959), 130 Ind. App. 1, 159 N. E. 2d 734, wherein Judge Ryan, speaking for this court, stated:

"The question of whether or not an injury arises out of and in the course of the employment is a question of fact.

The burden of establishing such fact rests upon the claimant and on appeal we may view only that evidence most favorable to the appellee. *Kinsey v. Sheller Manufacturing Corp.* (1955), 125 Ind. App. 493, 499, 126 N. E. 2d 267.

"A finding and award will not be disturbed upon the evidence unless it is of such a conclusive nature with all inferences reasonably deducible therefrom as to force a conclusion contrary to that reached by the Board. *U.S. Steel Corp. v. Dykes* (1958), 238 Ind. 599, 154 N. E. 2d 111."

My belief that reasonable men might have questioned whether appellant's accident arose out of the course of his employment requires that I vote to affirm the award of the Industrial Board.

Hoffman, J., concurs.

NOTE.—Reported in 246 N. E. 2d 410.